# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEN R. BACKUS, ET AL :<br>       Plaintiffs, :<br>:<br>v. :<br>:<br>CONNECTICUT COMMUNITY BANK, :<br>N.A., owner of WESTPORT NATIONAL :<br>BANK :<br>:<br>       Defendant. : | Civ. No. 3:10-CV-798 |

## RULING ON MOTION FOR PERMANENT INJUNCTION

On May 13, 2011, Defendant Connecticut Community Bank ("CCB") moved to enjoin Plaintiffs from prosecuting actions in state court and from filing any new related actions. For the reasons stated herein, the motion [Doc. No. 48] is **denied**.

## I. FACTS

On March 30, 2011, this Court granted CCB's motion to dismiss Plantiffs' state law claims and denied Plaintiffs' motion to remand the case to state court. The Court found that Plaintiffs' state law claims were preempted by the Securities Litigation Uniform Standards Act ("SLUSA") because the case was a covered class action alleging misrepresentations or omissions in connection with the purchase or sale of a covered security. Plaintiffs have filed an appeal of this Court's decision with the Second Circuit.

Beginning on April 7, 2011, plaintiffs in this action began filing individual cases in Connecticut Superior Court asserting a variety of state law claims, some which are nearly identical to those dismissed by this Court in its March 30, 2011 opinion.[1] From April 7th through

---

[1] Some of the claims are entirely different from the claims raised in this case. For instance, at least one recently-filed state action asserts that CCB retained account holders' funds, rather than investing them with Madoff, in violation of the terms of the Custodian Agreement. Golub Aff. ¶ 17.

May 5th, fourteen separate actions were filed in Connecticut Superior Court by Plaintiffs' counsel on behalf of fourteen individual plaintiffs. Plaintiff's counsel states that he intends to file a total of 40 or more actions in state court on behalf of individual Plaintiffs in this case. Golub Aff. ¶ 7. He does not, however, intend to file actions on behalf of individuals who have been in named as Plaintiffs in this action solely because they are members of a pension plan. Id. In early April, Plaintiffs' counsel discussed his intentions with CCB's counsel in order to facilitate service of the new state court complaints and coordinate discovery in the new actions. CCB's counsel never advised him that it considered the initiation of individual actions to be in violation of this Court's judgment until CCB filed its emergency motion for a permanent injunction. Id. ¶ 9.

**II. DISCUSSION**

On May 13, 2011, CCB moved to enjoin these state court actions on the grounds that these actions seeks to relitigate claims decided by this Court. CCB makes three arguments in support of its motion: 1) the relitigation exception to the Anti-Injunction Act applies here because the individual state court actions seek to relitigate claims or issues that were decided by this Court in its March 30, 2011 ruling; 2) an injunction should issue to further the purposes of SLUSA; and 3) an injunction should issue to protect CCB from harassing litigation. Because this Court finds that none of these arguments justify enjoining the state court cases, it will deny the motion.

*A. Anti-Injunction Act*

Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law." 28 U.S.C. § 1651(a). The Anti-Injunction Act, which sets limits on a district court's use of injunctions under

the All Writs Act, nevertheless permits district courts to issue injunctions to stay proceedings in a state court "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The "protect or effectuate its judgments" provision—otherwise known as the relitigation exception to the Anti-Injunction Act—authorizes district courts to issue injunctions "to protect against relitigation of 'claims or issues' that '*actually have been decided by the federal court*.'" Smith v. Woosley, 399 F.3d 428, 434 (2d Cir. 2005) (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 148 (1988)) (emphasis added); see also Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 123 n.15 (2d Cir. 2007). The relitigation exception is narrow and is "not [to] be enlarged by loose statutory construction." Chick Kam Choo, 486 U.S. at 146 (internal citations and quotations omitted).

In determining whether the relitigation exception applies, this Court must first discuss what was actually decided in its March 30, 2011 opinion. In that opinion, this Court held that Plaintiffs' state law claims were preempted by SLUSA because the case at bar is (1) a covered class action (2) brought under state statutory or common law (3) alleging a misrepresentation or omission of a material fact (4) in connection with the purchase or sale (5) of a covered security.[2] A "covered class action" under SLUSA is defined as either (1) a single lawsuit seeking damages

---

[2]SLUSA states in relevant part:
No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by an private party alleging—
    (A)    an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
    (B)    that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
15 U.S.C. 77p(b).

on behalf of more than 50 persons or (2) a group of lawsuits pending in the same court and joined, consolidated, or otherwise proceeding as a single action for any purpose and seeking damages collectively on behalf of more than 50 persons. 15 U.S.C. § 77p(f)(2)(A). Because this action involves more than 50 Plaintiffs, and thus seeks damages on behalf of more than 50 persons, this Court held that the "covered class action" criterion was met. The Court's ruling, however, never stated that Plaintiffs were barred from refiling individual actions (or any action involving fewer than 50 plaintiffs) in state court in order to avoid SLUSA preemption.

In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 87 (2006), the Supreme Court stated:

> SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims. *The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist.*

(emphasis added); accord Romano v. Kazacos, 609 F.3d 512, 519 n.2 (2d Cir. 2010) ("[U]nder SLUSA, plaintiffs can still bring state law claims alleging fraud in connection with transactions in covered securities in state court so long as they pursue their claims individually or as part of a class numbering fifty or less."); Kircher v. Putnam Funds Trust, 547 U.S. 633, 636 n.1 (2006) ("the Act . . . does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court"). Although a state law claim brought on behalf of more than 50 persons may be subject to SLUSA preemption, "[p]laintiffs retain the right to bring such a claim as an individual state-law claim . . ." In re Lord Abbett Mutual Funds Fee Litig., 553 F.3d 248, 251 (3d Cir. 2009).

In its motion to enjoin the state court actions, CCB argues that "SLUSA is a critical,

claims-determinative issue" like other issues—such as statute of limitations, mootness or non-justiciability—on which federal courts have dismissed cases and later enjoined state court proceedings that relitigated the same issue. Def.'s Mem. at 10. At least one circuit court, however, has come to the opposite conclusion and held that a ruling that SLUSA preempts state law claims is not a final judgment on the merits because SLUSA is a jurisdictional issue. In Miller v. Nationwide Life Ins. Co., No. 06-31178, 2008 WL 3086783 (5th Cir. Aug. 4, 2008), the plaintiff's breach of contract claim in his class action complaint, which alleged that the defendant insurance company breached two variable annuity contracts by charging certain fees, was dismissed as preempted by SLUSA. A few years later, the plaintiff brought several individual claims against the insurance company, one of which was a breach of contract claim that was identical in all relevant aspects to the claim that had been dismissed in the class action lawsuit. The Fifth Circuit held that the breach of contract claim "is not barred by *res judicata* because [the plaintiff] has never received a final judgment on the merits of his . . . claim." Id. at *3. Dismissal of a state law claim because of SLUSA preemption, the court held, is a jurisdictional defect, and thus could not bar the plaintiff's refiling of the state law claim as an individual action. Id. at *5. See also Kircher, 547 U.S. at 655 ("[A] motion to remand claiming the action is not precluded [by SLUSA] must be seen as posing a jurisdictional issue. If the action is precluded, neither the district court nor the state court may entertain it, and the proper course is to dismiss. If the action is not precluded, the federal court likewise has no jurisdiction to touch the merits, and the proper course is to remand to the state court that can deal with it. . . . The work done is jurisdictional, as is the conclusion reached and the order implementing it.").

As CCB points out, "SLUSA renders nonactionable state claims brought by plaintiffs as

part of a *covered class action* because such claims cannot be litigated in state court *or* in federal court." Romano, 609 F.3d at 519 n.2 (first emphasis added). This Court's March 30, 2011 ruling held that Plaintiffs' state law claims were preempted by SLUSA because they sought damages on behalf of more than 50 persons, and thus came under SLUSA's definition of a covered class action. The Court did not hold that Plaintiffs were barred from refiling their claims individually, nor does the Court believe that SLUSA or any other statute prevents individual refilings. Because none of the pending state court actions seek damages on behalf of more than 50 persons, the issue decided in this Court's March 30, 2011 ruling does not appear to have any applicability to the pending state court actions. Therefore, the relitigation exception is not an adequate basis to enjoin the state court proceedings.

*(B) Purpose of SLUSA*

CCB also argues that an injunction should issue to further the purpose of SLUSA. Congress' intent in enacting the Private Securities Litigation Reform Act ("PSLRA") and it supplement SLUSA was to "target . . . perceived abuses of the *class-action vehicle* in litigation involving nationally trading securities." Dabit, 547 U.S. at 81 (emphasis added). The PSLRA and SLUSA do not apply to individual cases alleging fraud in connection with the purchase or sale of securities because the perceived abuses in such cases—such as the potential for crippling multi-million dollar judgments that pressure the defendant to settle—do not exist. Requiring aggrieved parties to file their securities-related state law claims individually rather than by class action is exactly what Congress intended in enacting SLUSA.

Notably, Congress clearly intended to minimize the circumvention of SLUSA by broadly defining "covered class action." The definition encompasses not only any one lawsuit asserting damages on behalf of more than 50 persons, but "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 person; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 77p(f)(2)(A)(ii). Here, however, the pending state courts actions do not meet that definition, as they currently seeks damages on behalf of only fourteen persons, and Plaintiffs' counsel intends to file actions on behalf of approximately forty persons in total. Moreover, the cases have not yet been consolidated or joined, and it is too early in the litigation process to determine whether they are proceeding as a single action for any purpose. See, e.g., In re Enron Corp. Sec. Litig., 535 F.3d 325, 340 (5th Cir. 2008) (holding that state law cases were proceeding as a single action "because the plaintiffs have acted in union throughout this litigation: they filed nearly identical complaints; jointly scheduled discovery; filed joint motions, provided nearly identical discovery responses; and used the same experts and expert reports."); In re Worldcom, Inc. Sec. Litig., 308 F. Supp. 2d 236, 246 (S.D.N.Y. 2004) (holding that ten state court actions were joined, consolidated or otherwise proceeding as a single action because they had been consolidated for pretrial purposes and because the "plaintiffs' court filings are exact replications or simple joinders to each others' papers"). The Court therefore concludes that denying the motion for permanent injunction does not run counter to the purposes of SLUSA.

*(C) Harassing Litigation*

CCB's last argument is that an injunction should issue to protect it from harassing litigation. "It is well settled that, where a district court finds that an action is repetitious, baseless, or intended to harass, it may enjoin it in the exercise of its inherent equity power pursuant to the All Writs Statute." Browning Debenture Holders' Comm. v. DASA Corp., 605 F.2d 35, 38 (2d Cir. 1978). CCB argues that it is should not have to defend this Court's judgment in its favor on appeal and, at the same time, defend against new state court actions brought by the same plaintiffs making some of the same claims.

According to CCB, by filing the these state court actions, Plaintiffs are acting "as if this Court had done the opposite of what it did, denying judgment and remanding the cases to state court." Def.'s Mem. at 16. This Court disagrees with CCB's characterization of the March 30, 2011 ruling. In dismissing the case at bar, the Court held that Plaintiffs could not proceed with their state law claims as a class action involving more than 50 individual plaintiffs. Had Plaintiffs then initiated a new state action seeking damages on behalf of 50 or more persons, they would be violating this Court's ruling and an injunction would be proper.[3] But Plaintiffs did not do this. They instead proceeded to file individual lawsuits. Although CCB argues that the

---

[3]Defendants' reliance on Professional Mgmt. Assocs. v. KPMG LLP, 345 F.3d 1030 (8th Cir. 2003) is distinguishable for this reason. In that case, the plaintiff's class action claims were dismissed as preempted by SLUSA. After the district court denied plaintiff leave to amend his complaint, he filed a new class action lawsuit that was identical to the proposed amended complaint in his previous case. The new complaint was again dismissed as preempted by SLUSA. In reviewing the dismissal of the new complaint, the Eighth Circuit held that it was barred by *res judicata* because "denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action." Id. at 1032. The court also held that the district court should have sanctioned the plaintiff for filing a frivolous lawsuit that sought to relitigate claims he had been denied leave to file in a previous action. Id. at 1033.

individual lawsuits make it more difficult and expensive to defend itself, the costs and difficulty to CCB are not any greater than those to Plaintiffs and their counsel.

Moreover, at least one circuit court has held that Plaintiffs' counsel's decision to file multiple state court actions in order to avoid SLUSA preemption is not abusive or harassing. In Newby v. Enron Corp., 302 F.3d 295 (5th Cir. 2002), the Fleming law firm filed several cases alleging fraud in relation to the collapse of Enron, each of which sought damages on behalf of fewer than 50 plaintiffs, in Texas state court in an apparent effort to avoid SLUSA preemption. At the same time, over 70 cases arising from the Enron collapse were transferred to and consolidated in the Southern District of Texas for pre-trial coordination purposes. In reviewing the district court's injunction barring the Fleming law firm from filing any new Enron-related actions without leave of the district court, the Fifth Circuit held that the law firm's "efforts to avoid [SLUSA] are not by themselves an abuse of this court." Id. at 302. The court nevertheless upheld the injunction on the grounds that the law firm had engaged in other litigation tactics that the district court found vexatious, abusive and needlessly harassing, such as moving for temporary restraining orders in the pending state court cases without giving advance notice to the defendant. Id. at 301-303. The Fifth Circuit emphasized, however, that

> the district court cannot predicate future denials of leave [to file new actions] solely upon [the Fleming law firm's] desire to avoid the reach of the Securities Litigation Uniform Standards Act. We do not question the filing of suits tailored to avoid federal jurisdiction. Nor do we countenance any preemptive federal dominion. The parallel exercise of state and federal judicial power is inherent in our government of dual sovereignty.

Id. at 303.

Here, Plaintiffs' counsel's behavior has been the opposite of harassing or vexatious. Shortly after this Court dismissed this action as preempted by SLUSA, Plaintiffs' counsel notified CCB's counsel of their intent to file individual state court actions because it was their belief that this was their only recourse after the March 30, 2011 ruling. Golub Aff. ¶ 7. The parties' discussions facilitated service of the new state court complaints and coordinated discovery in the new actions. Upon receiving advance notice of Plaintiffs' counsel's intentions, CCB's counsel never notified Plaintiffs' counsel that they believed the state court actions were barred by this Court's March 30, 2011 judgment. Instead CCB's counsel waited over a month from the time Plaintiffs' counsel filed the first state court action to file an emergency motion for a permanent injunction in this Court and to request expedited briefing on the matter. Based on these undisputed facts, there is no evidence that Plaintiffs' counsel's litigation tactics justify the harsh remedy of a permanent injunction.

### III. CONCLUSION

For the foregoing reasons, CCB's motion for a permanent injunction [Doc. No. 48] is **denied**.

SO ORDERED.

Dated at New Haven, Connecticut, this  26th  day of May, 2011.

/s/

Peter C. Dorsey, U.S. District Judge
United States District Court